RALPH BAGALEY v. PITTSB. ETC. IRON CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 30, 1891—Decided January 4, 1892.

1. The action of the board of directors of a corporation, electing a presi-
   dent at a salary to be fixed afterward by the president and a stockholder,
   the two holding nearly all the capital stock, is such an exercise of the
   authority of the board as will support an express contract for the salary
   binding upon the corporation.
2. To recover the amount of the salary, the plaintiff must show that it was
   afterwards fixed in pursuance of said reference, and subsequently
   adopted and ratified by the board of directors; but such adoption and
   ratification may be inferred from acts done or permitted, and need not
   be proved by a recorded resolution.
3. To entitle the president to recover for salaries he paid to other persons
   employed by him in the service of the company, it must be found that
   the employment and services rendered were known, adopted and ratified
   by the board of directors, but such action may be inferred in the same
   manner, and need not be proved by the minutes.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOL-
LUM and MITCHELL, JJ.
No. 201 October Term 1891, Sup. Ct.; court below, No. 751
December Term 1889, C. P. No. 1.

Returnable to the first Monday of December, 1889, Ralph
Bagaley brought assumpsit against the Pittsburgh & Lake Su-
perior Iron Company, to recover for salary to himself, and for
salaries to others paid by him, as president of the defendant
company. Issue.

At the trial, on November 28, 1890, it was shown that the
defendant company was incorporated and organized in 1870,
under the laws of the state of Michigan, and reorganized in
1881 with an increased capital stock, for the purpose of acquir-
ing, developing and mining iron-ore lands in said state. At
the reorganization of the company, and after the date of Janu-
ary 10, 1883, at least, almost all the stock of the company was
owned by Ralph Bagaley, the plaintiff, and Mrs. Isabella Kirk-
patrick, the wife of Joseph Kirkpatrick. One of the by-laws

provided that the business of the company might be delegated to an agent. The minutes of a number of directors' meetings, from December 21, 1880, to January 28, 1889, were put in evidence; among others, the minutes of a meeting held January 10, 1883, at Pittsburgh. This meeting was held after the adjournment of a stockholders' meeting, and the minutes showed as follows:

" The result of the annual election being announced, the board proceeded to the election of officers to serve for the ensuing year, which resulted in Ralph Bagaley being chosen president at a salary of ——— dollars per annum.

" Mr. Jesse Lippincott was appointed secretary and treasurer, without recompense, his services being nominal. Joseph Kirkpatrick was appointed agent of the company, at a salary of two thousand five hundred dollars per annum, and house rent free. The remaining employees of the company were continued at their present salaries, to be changed or discontinued at the discretion of the president or agent.

" On motion of Ralph Bagaley, duly seconded, it was

" Resolved, That the board delegate the management of the company's business for the current year to the agent, excepting such as appertains to the transfers of stock and the executive department."

Witnesses, present at the meeting, testified that, all the other interests together being so small, the salary of the president was left undetermined as to amount, until Mr. Bagaley should consult with Mr. Kirkpatrick, the agent, who also represented the interest of Mrs. Kirkpatrick, and whatever sum was then agreed upon should be the annual salary to be received; that such consultation was had, and the salary established at one hundred dollars per month. Other testimony, tending to show subsequent ratification of the salary fixed for the plaintiff, and tending also to establish the plaintiff's claims for payments made to other employees of the company, covered by the plaintiff's statement of claim, sufficiently appears in the charge of the court below.

At the close of the testimony, the court, COLLIER, J., charged the jury:

The plaintiff, in this case, seeks to recover, first, for services

performed by him as president of the defendant company, which is a mining corporation under the laws of the state of Michigan; second, money paid by him to Mr. McLean for necessary and indispensable services alleged to have been rendered the company; and third, the amount of money paid by him to Mr. Jackman for services rendered at his instance and request. Mr. Bagaley alleges that he paid them, and asks now that the company reimburse him.

In the first place, it is admitted that this defendant is a corporation. It is admitted that at the time the salary is claimed to have been earned, Mr. Bagaley was president of the corporation. That raises the first question of law in the case. He being the president of the company, can he, under our law, recover salary for services rendered? The answer to that is this: He can receive a salary for services performed for the company, but only on one condition. The law is strict upon that point; and very properly so, because, in corporations, whether they be large or small, the stockholders (except when specially called together) agree that the board of directors shall manage the business for them, and whatever the board does in that behalf they are obliged to abide by. But no president of a corporation can recover for salary, unless he has an express contract with the corporation for such salary. Otherwise, if he does anything, he does it for himself and must look for payment to his own stock, which will get the benefit of it. That, I distinctly say to you, is the law of this state.

[Now, Mr. Bagaley, through his counsel, claims that he had an express contract for his salary. He told you how the board was constituted prior to his claim for salary, and that he and the Kirkpatrick family owned all the stock at that time. He claims that the board, such as the corporation had at that time, passed a resolution on the minutes that he should have a salary, but did not fix the amount. It is alleged, however, that at the time there was a distinct understanding that as Mr. Kirkpatrick and Mr. Bagaley were the persons owning the most stock, having the greatest interest in it, they should fix that amount; and it is claimed that that was done, that they talked it over and fixed his salary as president at one hundred dollars a month. I think Mr. Kirkpatrick says Mr. Bagaley was to attend to the business down here, and he was to attend to the business up at the mines.

Charge of Court below.

It is contended that because the one hundred dollars was not written in that resolution, Mr. Bagaley cannot recover. I think the learned counsel are mistaken about the law as to that. I instruct you that if you find the word "salary" is used in the resolution (which is not disputed); that such an arrangement was made as is alleged; that Mr. Bagaley, in pursuance of that arrangement, proceeded to perform his duties here as president; that after a certain period of time, with the consent of Mr. Kirkpatrick, or in any way without fraud, he had put upon the books and duly credited to him that amount; that such credit was on the books of the company subject to the inspection of any stockholder or director; that after it was put on the books different statements were made out containing that credit; that it was carried over in the trial balances and in the statements presented to the board of directors when they met, you would be justified in inferring that it was known, adopted and ratified by the corporation. It is not necessary in that ratification, under such circumstances, to have it spread upon the minutes in writing; you might infer it from the acts done, such acts as those. I do not say you should infer it, but I say that the evidence, if you believe it, will justify you in doing so. It is a matter of fact for you.] [5]

The learned counsel for the defendant contends that this salary should not be allowed, because it was not even put upon the books until 1887, and that when it was brought before the board it was in a lump sum, and they had no power to object until the new board was in power. I think one or two of these statements was presented after the new board was organized; but it is the board in power at the time that the ratification and adoption apply to. If it was adopted and ratified by acts done, if they had knowledge from anything that they say, knowing that he had been doing the services, and there was no objection made by the board having charge at the time, it would be sufficient, and you would be justified, if you saw proper, in inferring that the board knew, ratified and adopted it. Now, that is in dispute. Remember, you must apply the strict rule, he being president. . . . .

The other two items, for the services of Mr. McLean and Mr. Jackman, we will group together. As to Mr. McLean's salary, the contention is this: That Mr. Bagaley, who had been work-

Charge of Court below.

ing hard, was taken suddenly very ill just as the panic came on; that they had one hundred and some thousand dollars drafts on their agents at Cleveland, and were in very great trouble; and unless something was done, the whole thing would be swept away, there would not have been anything to contend about that to-day; that, under such circumstances, in his sickness, and having been elected president to attend to affairs here, he went to his friend Mr. McLean, or got the latter to go to him probably, told him the circumstances, and got him to undertake to carry these drafts, to renew them and arrange it so that this agent would not go under, and the corporation lose this valuable property; for it turns out now to be immensely valuable.

At first, Mr. McLean charged nothing for his services. [Mr. Bagaley alleges that he was sick a good while and that he employed Mr. McLean to manage that work; that he so managed that financiering matter as to keep the thing afloat and to save some sixty-two thousand dollars out of the hundred thousand dollars. As to this, you will observe that he had no bargain on the minutes; he did this, he alleges, under his powers as president, as he thought. This was in 1883. He then arranged for a salary of three hundred dollars per month for Mr. McLean, who was three years and a half at it, bringing it somewhere near to 1887. Some time after Mr. McLean's services had ceased, Mr. Bagaley, with the consent of Mr. Kirkpatrick, (not before the board,) had it spread upon the books, and as he paid it, as he alleges, he asked a credit for it; also, either at that time or some other time, a credit was placed upon the books for the salary of Mr. Jackman, a clerk, who actually kept the minutes of the board. I do not see as to Jackman, who actually kept the minutes of the board, why he could not recover the amount paid; because, if he kept the minutes of the board, it must have been with the board's knowledge, and they would be bound to pay what it was worth. He probably did some other work, but that was placed upon the books. Mr. Bagaley was given credit there for the whole amount. At one time, while this credit was upon the books, a payment was made to him of between seven and eight thousand dollars, a payment upon this account. That account was carried into all the books, carried into the

Charge of Court below.

trial balances, carried into the ledger; and was shown to the directors, presented to the board at their meeting, and no objection made until this suit. Now, I say to you, if those facts are true, and the services of Jackman and McLean were worth what is alleged here in the evidence, if you believe they were worth that amount, that is evidence from which you might infer an actual adoption and ratification on the part of the corporation. But that is contested. I am only stating the evidence for the plaintiff.] [5]

The defendant claims that that was totally unnecessary. While denying that he had any right to the one thousand two hundred dollars a year because he did not get the proper action of the board, it is alleged, even if he was entitled to the one hundred dollars a month, that he was to do this work here, that he was to attend to this business and was not to add to that salary three hundred dollars a month or three thousand six hundred dollars a year for another man, but that that was part of his duty, and that it was unreasonable and ought not to be allowed, which is for you to say. It is claimed that the attention of the directors was not called to it in any way, except in a general way, and that they had no knowledge of it. . . . .

Counsel for defendant have submitted the following points :

3. The court is asked to say, as a matter of law, that the action of the board of directors in electing the plaintiff as president with ———— salary, as recorded in minute book, page 77, was not such a legal exercise of the board's authority to fix his salary, as would constitute a contract with the plaintiff upon which he can recover in this action.

Answer: Refused.[1]

4. If this is refused, then the court is asked to say that, in order to establish a contract through said action, the plaintiff must show that the amount of salary now sued for was in pursuance of said action, and subsequently adopted and ratified by the board of directors.

Answer: Affirmed, with the qualification that the adoption and ratification by the corporation may be inferred from acts done or permitted, and need not be proved by a resolution spread on the minutes.[2]

5. It appearing that the plaintiff was not authorized to employ the parties for whom salaries are claimed here in the first

instance, to entitle the plaintiff to recover for the same the jury must find that the employment and services of said parties were known, adopted and ratified by the board of directors.

Answer: Affirmed, with the qualification that the adoption and ratification by the corporation need not be proved by a resolution spread upon the minutes.[3]

—The jury returned a verdict for the plaintiff for $20,860.76. A rule for a new trial having been discharged and judgment entered, the defendant company took this appeal, assigning for error:

1–3. The answers to the defendant's points.[1 to 3]

5, 5. The portions of the charge embraced in [ ][5 5]

*Mr. C. A. O'Brien* (with him *Mr. C. K. Yeager*), for the appellant.

That the plaintiff must show an express prior contract, to enable him to recover, counsel cited: Loan Ass'n v. Stonemetz, 29 Pa. 534; Kilpatrick v. Bridge Co., 49 Pa. 118; Gridley v. Railroad Co., 71 Ill. 201. And the proof of ratification was not sufficient: Morawetz on Corp., §§ 517, 531; Gridley v. Railroad Co., 71 Ill. 201; Morrison v. Jones, 31 Minn. 140; Butts v. Woods, 37 N. Y. 317; Coleman v. Railroad Co., 38 N. Y. 202; Pierce on Railroads, § 29; Nichols v. Ernest, 6 H. L. 401; Angell & Ames on Corp., § 231; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Stoystown Turnpike Co. v. Craver, 45 Pa. 386; Pike Co. v. Rowland, 94 Pa. 238.

*Mr. P. C. Knox* and *Mr. D. T. Watson*, for the appellee, were not heard.

The brief filed cited: Taylor on Corp., §§ 612, 615, 627; Twin-Lick Oil Co. v. Marbury, 1 Otto 588; Ashhurst's App., 60 Pa. 290; Hammond v. Hotel Co., 21 Am. L. Reg., N. S., 443; Warner's App., 2 Cent. R. 44.

PER CURIAM:

Judgment affirmed.